UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARIO CURVAN, #405605,

    Petitioner,

                                           Civil No: 06-CV-13439
                                           Honorable Gerald E. Rosen
                                           Magistrate Judge R. Steven Whalen

v.

JAN TROMBLEY,

    Respondent.
_____/

**OPINION & ORDER DENYING PETITION
FOR WRIT OF HABEAS CORPUS**

Petitioner, Mario Curvan, is a state inmate currently incarcerated at Lakeland Correctional Facility in Coldwater, Michigan. Petitioner was convicted after his Wayne County Circuit Court jury trial of felony murder, Mich. Comp. Laws §750.316(1)(b); and armed robbery, Mich. Comp. Laws §750.529. He was sentenced to life imprisonment for the felony-murder conviction and twenty to forty years' imprisonment for the armed robbery conviction. The Michigan Court of Appeals vacated Petitioner's armed robbery conviction and sentence and remanded the matter for modification of the judgment of sentence.

Petitioner has filed a petition for writ of habeas corpus through counsel under 28 U.S.C. §2254. For the reasons that follow, the Court will deny the petition.

**I. BACKGROUND**

Petitioner's conviction arose from the murder of Frank Bono, the owner of a neighborhood convenience store which was formerly a laundry mat . Mr. Bono was found

laying on the floor of his store, having suffered blunt force trauma to the head from a hammer and the impalement of his neck with a screwdriver. Mr. Bono was alive when he was found and was rushed to the hospital. However, after Mr. Bono underwent multiple surgical procedures, he lapsed into a coma where he ultimately suffered respiratory failure, sepsis and multi-organ failure. Mr. Bono died several months later.

Petitioner filed a direct appeal of right with the Michigan Court of Appeals raising the following claims

> I. The trial court's denial of the pre-trial motion to suppress the custodial statements was reversible error, where Mr. Curvan invoked his Fifth Amendment right to counsel and the police failed to scrupulously honor that right by ceasing all interrogation.
>
> II. The trial court violated Mr. Curvan's double jeopardy rights under the United States and Michigan Constitutions, where the court sentenced Mr. Curvan for first degree felony murder and the underlying felony of armed robbery.

Petitioner filed a supplemental brief on appeal raising the following additional claim:

> Mr. Curvan's Federal and State Constitutional right to be free from unreasonable seizures was violated and his conviction must be reversed where his warrantless arrest in his residence was not supported by probable cause but instead was ordered for the purpose of a[ ] homicide investigation and that his statement to police is fruit of the warrantless arrest. The prosecution failed to meet its burden of proving that the causal chain between Mr. Curvan's arrest and his inculpatory statement was broken.

The Michigan Court of Appeals affirmed the trial court's finding that Petitioner's confessions were voluntary, vacated the armed robbery conviction as violative of the prohibition against double jeopardy, and remanded the case for a modification of the judgment of sentence. *People v Curvan*, No 242376 (Mich. Ct. App. June 29, 2004).

The State then filed an application for leave to appeal with the Michigan Supreme Court raising the same claims as those presented before the Michigan Court of Appeals, as well as the following claim:

> In *People v Nutt*, the Court adopted the *Blockb[u]rger* "same elements" test in the context of successive prosecutions and overruled its previous decision in *People v White*. And although this Court noted that it was "not here concerned with the meaning of the term 'offense' as it applies to the double jeopardy protection against multiple punishments," this Court also observed that "there is no authority ... for the proposition that the [Double Jeopardy Clause] has different meanings in different contexts." There is thus no reason why *Blockb[u]rger* should not be adopted for purposes of multiple punishments.

Petitioner sought leave to cross-appeal based on the following claims:

> I.  The trial court's denial of the pre-trial motion to suppress the custodial statements was reversible error where Mr. Curvan invoked his Fifth Amendment right to counsel and the police failed to scrupulously honor that right by ceasing all interrogation.
>
> II.  Mr. Curvan's state and federal right to be free from unreasonable searches was violated and his conviction must be reversed where his warrantless arrest in his residence was not supported by probable cause but instead was ordered for the purpose of a homicide investigation and that his statement to police is a fruit of the warrantless arrest. The prosecution failed to meet its burden of proving the causal chain between Mr. Curvan's arrest and his inculpatory statement was broken.

The Michigan Supreme Court granted leave to appeal, but denied leave for Petitioner's cross-appeal. *People v Curvan*, 471 Mich 914; 688 NW2d 509 (2004). However, upon reconsideration, the Michigan Supreme Court stated as follows:

> [The] portion of the November 4, 2004 order which granted leave to appeal is VACATED and leave to appeal is DENIED, because we are no longer persuaded that the questions presented should be reviewed by this Court.

*People v. Curvan,* 473 Mich. 896, 896; 703 NW2d 440 (2005)*.*  Justice Marilyn Kelly concurred as follows:

> I agree with the decision to vacate this Court's order granting leave.  I write

only because Justice Corrigan's dissent evokes a response. It pictures a parade of horribles that she envisions if *People v. Wilder* and *People v. Harding* are not overturned. I believe that her concerns are unrealistic.

*Id.* Justice Weaver dissented as follows and in pertinent part:

In deciding this case, I would adopt the concurrence/dissent of Justice Riley in *People v. Harding,* 443 Mich. 693, 721 -734, 506 NW2d 482 (1983), as the proper approach for double jeopardy claims involving multiple punishments. Under that approach, I would conclude, like Justice Riley, that double jeopardy principles do not prohibit sentencing defendant for both felony murder and the underlying felony of armed robbery because the Legislature intended to allow dual punishments for both crimes. Therefore, I would overrule *People v. Wilder,* 411 Mich. 328, 308 NW2d 112 (1981), and *People v. Harding, supra,* and I would reverse the Court of Appeals vacation of defendant's armed robbery conviction.

*Id.* at 897. Justice Corrigan dissented as follows and in pertinent part:

On the basis of Justice Riley's opinion in *Harding,* I would hold that sentencing a defendant for both felony murder and the predicate felony of armed robbery does not violate the multiple-punishments strand of the constitutional protection against double jeopardy. I would therefore overrule *Wilder* and *Harding* to the extent that they are inconsistent with this holding. Accordingly, this Court should reverse the judgment of the Court of Appeals and reinstate defendant's conviction and sentence for armed robbery.

*Id.* at 905.

Petitioner now files a petition for writ of habeas corpus under 28 U.S.C. §2254 raising the following claim:

The trial court's denial of the pre-trial motion to suppress the custodial statements was reversible error where Mr. Curvan invoked his Fifth Amendment right to counsel and the police failed to scrupulously honor that right by ceasing all interrogation.

## II.  STANDARD

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) Pub.L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996), which govern this case, "circumscribe[d]" the standard of review federal courts must apply when considering

4

applications for a writ of habeas corpus raising constitutional claims, including claims of ineffective assistance of counsel. *See Wiggins v. Smith,* 539 U.S. 510, 520 (2003).

As amended, 28 U.S.C. §2254(d) imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding.

28 U.S.C. §2254(d). Therefore, federal courts are bound by a state court's adjudication of a petitioner's claims unless the state court's decision was contrary to or involved an unreasonable application of clearly established federal law. *Franklin v. Francis,* 144 F.3d 429, 433 (6th Cir. 1998). Mere error by the state court will not justify issuance of the writ; the state court's application of federal law "must have been objectively unreasonable." *Wiggins,* 539 U.S. at 520-21 (quoting *Williams v. Taylor,* 529 U.S. 362, 409 (2000) (internal quotes omitted)). Additionally, this Court must presume the correctness of state court factual determinations. 28 U.S.C. §2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct."); *see also West v. Seabold,* 73 F.3d 81, 84 (6th Cir. 1996) (stating that "[t]he court gives complete deference to state

5

court findings of historical fact unless they are clearly erroneous").

> The Supreme Court explained the proper application of the "contrary to" clause: A state-court decision will certainly be contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases . . .
>
> A state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of this court and nevertheless arrives at a result different from [the Court's] precedent.

*Williams,* 529 U.S. at 405-06.

The Supreme Court held a federal court should analyze a claim for habeas corpus relief under the "unreasonable application" clause of §2254(d)(1) "when a state-court decision unreasonably applies the law of this Court to the facts of a prisoner's case." *Id.* at 409.

> [A] federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable . . .
>
> [A]n *unreasonable* application of federal law is different from an *incorrect* application of federal law . . . Under §2254(d)(1)'s "unreasonable application" clause, then a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly . Rather, that application must also be unreasonable.

*Id.* at 409, 410-11. *See also Davis v. Coyle,* 475 F.3d 761, 766 (6th Cir. 2007); *King v. Bobby,* 433 F.3d 483, 489 (6th Cir. 2006); *Harbison v. Bell,* 408 F.3d 823, 828-29 (6th Cir. 2005); *Rockwell v. Yukins,* 341 F.3d 507, 512 (6th Cir. 2003) (en banc).

### III.  DISCUSSION

### A. Suppression of Petitioner's Custodial Statement

6

Petitioner claims that the trial court erred when it denied trial counsel's motion to suppress his inculpatory statement to the police on the ground that during his interrogation, he asked to speak with an attorney on three separate occasions, and his request was not honored. Petitioner asserts that the law enforcement agents continued to interrogate him despite his pleas for counsel. Specifically, Petitioner asserts that on two occasions he asked Agent Michael Mizer of the Federal Bureau of Investigations (FBI)[1] for an attorney before he made any statements, but Agent Mizer continued the interrogation. He also claims to have asked Investigator Ramon Childs, from the homicide division, if he could speak with an attorney *after* he had already made inculpatory statements and submitted to a polygraph exam, which he failed. Petitioner states that his request was also denied. Petitioner maintains that his statement violated the Fifth Amendment because the law enforcement officials did not scrupulously honor his right to an attorney after he invoked the right.

### 1. Supreme Court Precedent

The United States Supreme Court has held that the interrogation of a suspect must cease when the suspect invokes his right to remain silent or his right to the assistance of counsel. *See Miranda v. Arizona*, 384 U.S. 436, 474 (1966); *see also Michigan v. Mosley*, 423 U.S. 96, 104 (1975). If an accused wishes to invoke his right to counsel, however, he must do so unambiguously. *See Davis v. United States*, 512 U.S. 452, 458-59 (1994). As the Supreme Court held in *Davis*, "... if a suspect makes reference to an attorney that is

---

[1] The FBI was involved in this case because it was determined that Petitioner was not only wanted for questioning regarding the death of Frank Bono, but he was also wanted for deportation as it was determined that he was an INS (Immigration and Naturalization Service) fugitive.

ambiguous or equivocal in that a reasonable officer in light of the circumstances would have understood only that the suspect might be invoking the right to counsel our precedents do not require the cessation of questioning." *Id.* at 459.

Although *Davis* concerned the right to counsel, "every circuit that has addressed the issue squarely has concluded that *Davis* applies to both components of *Miranda*: the right to counsel and the right to remain silent," *Bui v. DiPaola*, 170 F.3d 232, 239 (1st Cir. 1999) (collecting cases), including the United States Court of Appeals for the Sixth Circuit. *See United States v. Hurst*, 228 F.3d 751, 759-60 (6th Cir. 2000) (ruling that a suspect's invocation of the right to remain silent must be unequivocal to require that police questioning cease); *see also United States v. Hicks*, 967 F. Supp. 242, 249-50 (E.D. Mich. 1997) (Rosen, J.)

To protect the Fifth Amendment right to remain silent, an accused must be warned before any questioning that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed. The defendant may waive effectuation of these rights, provided the waiver is made voluntarily, knowingly and intelligently.

If, however, he indicates in any manner and at any stage of the process that he wishes to consult with an attorney before speaking, there can be no questioning. *Miranda*, 384 U.S. at 444-45. A valid waiver of the right to have counsel present during custodial interrogation, cannot be established by showing only that [the accused] responded to further police-initiated custodial interrogation even if he has been advised of his rights. [A]n accused . . . having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available

8

to him, unless the accused himself initiates further communication, exchanges, or conversations with the police. *Edwards v. Arizona*, 451 U.S. 477, 484-85 (1981) (footnote omitted). In other words, "when counsel is requested, interrogation must cease, and officials may not reinitiate interrogation without counsel present, whether or not the accused has consulted with his attorney." *Minnick v. Mississippi*, 498 U.S. 146, 153 (1990).

### 2. Michigan Court of Appeals Finding

The Michigan Court of Appeals concluded that there was no violation of Petitioner's Fifth Amendment rights, stating as follows:

> . . . [T]he trial court found that defendant signed a *Miranda* waiver on two separate occasions at the request of two different officers. Neither officer remembered defendant requesting an attorney. Following a suppression hearing, the trial court found that "defendant never requested a lawyer during any interrogation at any point that he was in custody prior to the time or concurrent with the time that the two statements at issue were made."
>
> In *[People v.] Sexton, [ ],* [461 Mich. 746; 609 NW2d 822 (2000)] our Supreme Court adopted the dissenting opinion of Judge Murphy which stated, in relevant part, "'Further, if resolution of a disputed factual question turns on the credibility of witnesses or the weight of the evidence, we will defer to the trial court.'" *Sexton, supra* at 752, quoting *People v Sexton*, 236 Mich. App. 525, 543; 601 N.W.2d 399 (1999) (Murphy, J., dissenting). In this case, defendant stated that at some point during questioning he requested an attorney. The officers deny a request was ever made. Additionally, defendant signed two separate Waiver of Rights forms. Because we defer to the trial court's assessment of credibility, we affirm the finding of the trial court that defendant's confessions were voluntary. Additionally, we are not left with a definite and firm conviction that the trial court made a mistake in its finding of fact.

*People v. Curvan*, No. 242376, *1 (Mich App, June 29, 2004).

### 3. The Relevant State Court Suppression Hearing Testimony

On January 7, 2002, the trial court conducted an evidentiary hearing on defense counsel's motion to suppress Petitioner's inculpatory statements to law enforcement

9

officials. Petitioner testified; and his allegations are summarized above.

Regarding Agent Mizer, the trial court summarized his testimony and concluded as follows:

> He met with Mr. Curvan on the a.m. of August 21 of last year, which was the year 2001. They were investigating the murder of Mr. Bono.
>
> He got a tip that the defendant was a witness. Mr. Curvan was arrested on a fugitive warrant regarding his INS status. He was taken to 1300 Beaubien. Even though the special agent felt that the defendant was just a witness in the case, he wanted to be extra cautious so he read the defendant his *Miranda* rights which are indicated in Exhibit Number One.
>
> The defendant read and initialed Exhibit Number One. The special agent verified that the defendant could read. He did inform the defendant that the FBI might be able to help him with his INS problems. It was, again, that the defendant was viewed by the FBI agent as a witness, not a suspect. The defendant was willing to talk about the murder.
>
> At about ten o'clock, the questioning starts. The defendant's story did not make sense. The FBI agent became suspicious regarding the use of the hammer.
>
> He noted that the defendant was of normal intelligence. He was not intoxicated. ***The defendant never asked for a lawyer***. He asked the defendant if he wanted to take a polygraph test, which was arranged in the afternoon at around four o'clock p.m. He told the defendant if he told the truth he would see what he could do with the INS problem. And that was earlier in the morning when he felt the defendant was just a witness. **And significantly he told us the defendant never asked for a lawyer.**

Tr. 1/17/02, at 82-83 (emphasis added).

Investigator Sims' testimony was also summarized as follows by the trial court:

> [Petitioner] was advised of his rights. The defendant read and initialed. The defendant understood his rights. **Significantly, the defendant never asked to speak with a lawyer.** He interviewed the defendant regarding the case. The defendant gave him information The procedure is that the case is discussed and then certain control questions are prepared by the investigator, Investigator Sims, the polygraph examiner. And the test was

10

given.

The whole process lasted about two hours. When it was concluded, he told the defendant he was not telling the truth. The then defendant proceeded to tell him what happened

\* \* \*

**Significantly, the defendant never asked to speak to an attorney**. The defendant had no complaints of food nor medication.

*Id.* at 83-84. (emphasis added)

Finally, Investigator Childs' testimony was summarized by the trial court as follows:

When he first spoke to the defendant, he noted the defendant was under arrest. His rights had been read previously by Officer Mizer the morning the morning of August 21. He took the defendant to have his polygraph test taken. After the polygraph, he spoke to the defendant at police headquarters. As he indicated in Exhibit Four, he advised the defendant of his rights.

\* \* \*

The defendant gave him a statement dated August 21 about 10:05 p.m. There were no threats made to the defendant, no promises. **The defendant never asked to speak to an attorney.** The statement took about half an hour.

*Id.* at 84-85. (emphasis added).

At the conclusion of the hearing, the trial court concluded as follows:

. . . [T]his Court is going to find that the defendant never requested a lawyer during any interrogation at any point that he was in custody prior to the time or concurrent with the time that the two statements at issue were made.

\* \* \*

This Court finds that the prosecutor has met its murder (sic) [burden] of the evidence that the statements made by Mr. Curvan as indicated in Exhibit Number Three and Exhibit Number Five were voluntarily made. Therefore the motion to suppress is denied.

*Id.* at 87-88.

### 4. Analysis

The record indicates that although Petitioner claims to have requested an attorney on three separate occasions, the record also bears out that three law enforcement officials

11

deny that any such request was made. Since deference is given to the trial court's assessment of the weight of the evidence and the credibility of the witnesses and the trial court findings will not be disturbed unless they are clearly erroneous, *Sexton, supra,* the Michigan Court of Appeals was correct in relying upon the determination of the trial court regarding the credibility of the Petitioner.  Furthermore, there is no evidence, other than Petitioner's self-serving testimony, that he requested counsel during his interrogation.

Therefore, the record indicates that Petitioner's Fifth Amendment right to have an attorney present during his pretrial interrogation was waived and the decision of the Michigan appellate courts was not contrary to an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.

### IV.  CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that the petition for a writ of habeas corpus is **DENIED.**

                               s/Gerald E. Rosen
                               Chief Judge, United States District Court

Dated:  May 8, 2009

I hereby certify that a copy of the foregoing document was served upon counsel of record on May 8, 2009, by electronic and/or ordinary mail.

                               s/Ruth Brissaud
                               Case Manager